﻿Citation Nr: AXXXXXXXX
Decision Date: 07/31/20 Archive Date: 07/31/20

DOCKET NO. 200515-87262
DATE: July 31, 2020

ORDER

A rating in excess of 10 percent for thoracolumbar strain with lumbar degenerative disc disease L4-L5 (lumbar spine disability) prior to October 7, 2019, and in excess of 20 percent thereafter is denied.

A rating in excess of 10 percent for right knee disability with limitation of flexion is denied.

A rating of 20 percent for right knee disability with limitation of extension from October 7, 2019, is granted.

A 10 percent rating for instability of the right knee is granted, effective July 14, 2012.

A rating in excess of 10 percent for status post open reduction internal fixation (ORIF) right hand fracture (right hand disability) is denied.

A compensable rating for right leg length discrepancy is denied.

A compensable rating for the service-connected right hand scar is denied.

FINDINGS OF FACT

1. Prior to October 7, 2019, lumbar spine disability was not more nearly manifested by forward flexion of 60 degrees or less; or a combined range of motion of 120 degrees or less; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spine contour; or incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the previous 12 months. From October 7, 2019, lumbar spine disability is not more nearly manifested by forward flexion of 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine

2. Right knee flexion is not more nearly limited to 30 degrees or worse.

3. Right knee disability is manifested by extension limited to 15 degrees from October 7, 2019, based on VA examination findings of that date.

4. The Veteran has had slight instability of the right knee throughout the appeal period.

5. The Veteran’s service-connected right hand disability has been manifested by pain, but has not been manifested by ankylosis of the right hand.

6. For the entire initial rating period on appeal, the shortening of the right leg has not more nearly approximated 1.25 inches to two inches shorter than the left leg.

7. The Veteran’s right hand scar does not manifest symptoms of pain or instability.

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for lumbar spine disability prior to October 7, 2019, and in excess of 20 percent thereafter are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.71a, Diagnostic Code 5237.

2. The criteria for a rating in excess of 10 percent for a right knee disability with limited flexion are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5260.

3. The criteria for a 20 percent rating for right knee disability with limited extension from October 7, 2019, are met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, DC 5261.

4. The instability of the right knee has been slight throughout the appeal period; this 10 percent rating is effective from July 14, 2012. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, DC 5257.

5. The criteria for a rating in excess of 10 percent for limitation of motion of the right hand are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5229.

6. The criteria for compensable rating for the right leg length discrepancy are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.71a, Diagnostic Code 5275.

7. The criteria for a compensable rating for a right hand scar are not met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321, 4.1, 4.7, 4.118, Diagnostic Code 7805.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from June 2004 to July 2012.

A rating decision was issued under the legacy system in April 2013 and the Veteran submitted a timely notice of disagreement. The Board previously remanded the Veteran’s claims in November 2018. In April 2020, the agency of original jurisdiction (AOJ) issued a supplemental statement of the case (SSOC). The Veteran opted the claims into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a May 2020 VA Form 10182, Decision Review Request: Board Appeal, identifying the April 2020 SSOC. Therefore, the April 2020 SSOC is the decision on appeal. 

In the May 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the April 2020 SSOC. 38 C.F.R. § 20.301.

Increased Rating

Disability evaluations are determined by the application of VA’s Schedule for Rating Disabilities, which is based on average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3.

A veteran’s entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation for distinct periods of time, based on the facts found. Hart v. Mansfield, 21 Vet. App. 505 (2007). Hence, the following analysis is undertaken with the possibility that “staged rating” may be appropriate. Here, the Veteran’s symptomology has been consistent through the period at issue and staged ratings are therefore not appropriate.

At the outset, the Board notes that, when evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which functional loss due to limited or excess movement, pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 are to be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996). Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a; a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a criteria.”).

Painful motion with joint or periarticular pathology and unstable joints due to healed injury are recognized as productive of disability entitled to at least a minimal compensable rating for the joint. 38 C.F.R. § 4.59. The application of 38 C.F.R. § 4.59 is not limited to arthritis-related claims. Burton v. Shinseki, 25 Vet. App. 1 (2011).

1. A rating in excess of 10 percent for lumbar spine disability prior to October 7, 2019, and in excess of 20 percent thereafter.

The Veteran contends that he is entitled to a rating in excess of 10 percent for lumbar spine disability prior to October 7, 2019, and in excess of 20 percent thereafter.

The Board concludes that the preponderance of the evidence is against the claim for a rating in excess of 10 percent for lumbar spine disability prior to October 7, 2019, and in excess of 20 percent thereafter. Prior to October 7, 2019, lumbar spine disability was not more nearly manifested by forward flexion of 60 degrees or less; or a combined range of motion of 120 degrees or less; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spine contour; or incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the previous 12 months. From October 7, 2019, lumbar spine disability is not more nearly manifested by forward flexion of 30 degrees or worse; or favorable ankylosis of the entire thoracolumbar spine. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, DC 5237. As such, the criteria for increase are not more nearly approximated. 38 C.F.R. §§ 4.7, 4.71a, Diagnostic Code 5235-43.

Under the General Rating Formula for Diseases and Injuries of the Spine, a 10 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of height.

A 20 percent evaluation is warranted where forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees; or, forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent evaluation is provided for unfavorable ankylosis of the entire cervical spine; or forward flexion of the thoracolumbar spine 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine. A 50 percent evaluation is provided for unfavorable ankylosis of the entire thoracolumbar spine. 38 C.F.R. § 4.71a, Diagnostic Code 5235-43.

For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, entire thoracolumbar spine, or entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 68 Fed. Reg. 51,443, Note (5) (Aug. 27, 2003).

In determining the degree of limitation of motion, the provisions of 38 C.F.R. §§ 4.10, 4.40 and 4.45 are for consideration. See DeLuca, supra. Normal ranges of motion of the thoracolumbar spine include: Flexion from 0 to 90 degrees; extension from 0 to 30 degrees; lateral flexion bilaterally from 0 to 30 degrees; and rotation bilaterally from 0 to 30 degrees. 38 C.F.R. § 4.71a, Plate V.

The general formula for rating intervertebral disc syndrome (IVDS) based on incapacitating episodes provides as follows: Incapacitating episodes of IVDS having a total duration of at least 1 weeks but less than 2 weeks during the last 12 months is evaluated as 10 percent disabling; incapacitating episodes of IVDS having a total duration of at least 2 weeks but less than 4 weeks during the last 12 months is evaluated as 20 percent disabling; incapacitating episodes of IVDS having a total duration of at least 4 weeks but less than 6 weeks during the last 12 months is evaluated as 40 percent disabling; and incapacitating episodes of IVDS having a total duration of at least 6 weeks during the last 12 months is evaluated as 60 percent disabling. 38 C.F.R. § 4.71a, Diagnostic Code 5243.

Associated objective neurological abnormalities, including but not limited to bowel or bladder impairment, are to be evaluated separately under an appropriate Diagnostic Code. 68 Fed. Reg. 51,443, Note (1) (Aug. 27, 2003).

A May 2012 VA examination reflects findings for forward flexion to 90 degrees with pain at 75 degrees; extension to 30 degrees with pain at 15 degrees; bilateral flexion to 30 degrees with pain at 20 degrees; and bilateral rotation to 30 degrees with pain at 20 degrees. The examiner noted functional loss as pain on movement, less movement than normal, interference with sitting, and standing and/or weight-bearing. The Veteran described his flare-ups as limited by pain in activities, specifically, with prolonged sitting, standing, walking, repetitive bending and heavy lifting. Upon repetitive use testing after three repetitions, forward flexion was to 75 degrees, extension was to 15 degrees, right lateral flexion was to 20 degrees, left lateral flexion was to 20 degrees, and bilateral lateral rotation was to 20 degrees. The Veteran had localized tenderness or pain to palpation for joints and or soft tissue of the back described as mild; there was no guarding or muscle spasms; there was normal muscle strength; reflexes were normal; there was no muscle atrophy; sensory exam was normal; there was no radiculopathy; straight leg raising was negative; no intervertebral disc syndrome (IVDS) was indicated; and the Veteran did not use assistive devices. Functional impact on work was described as impaired prolonged sitting, standing, walking repetitive bending and heavy lifting.

An April 2013 VA treatment note showed that the Veteran began physical therapy for thoracolumbar spine/lumbosacral spine, and was able to complete all therapeutic exercises without any increase in pain or discomfort. A May 2013 x-ray showed L4-L5 shallow central/left paracentral disc herniation with impingement of the left L5 nerve root in the left lateral recess. No central canal stenosis was found. In July 2014, the Veteran reported increasing pain while working as a security guard in Baghdad. Thoracic spine had a normal appearance and exhibited no spasm of the paraspinal muscles. An August 2019 x-ray showed multilevel degenerative changes, most pronounced at L5-S1, where there was moderate stenosis of the left subarticular recess, resulting in contact with the descending left S1 nerve root. In addition, there was also narrowing of the left subarticular recess at L4-5 which may be contacting the descending left L5 nerve root. There was degenerative endplate edema at L4-5 followed by L5-S1 as well as annular fissure at L5-S1.

The Board accepts that the Veteran has functional impairment and pain. See DeLuca, supra. Additionally, the Board finds the Veteran’s own reports of symptomatology to be credible. However, neither the lay nor medical evidence reflects the functional equivalent of symptoms required for an evaluation in excess of 10 percent for the period prior to October 7, 2019. To warrant a higher rating, there must be the functional equivalent of flexion of not greater than 60 degrees or a combined range of motion not greater than 120 degrees. The Board has considered the complaint of pain, but the evidence reflects that this symptom has not caused impairment beyond that contemplated by the assigned rating in the absence of findings for weakened movement, excess fatigability, incoordination, or other impairment. Notably, the May 2012 VA examiner indicated the Veteran could perform repetitive use testing with three repetitions with the additional functional loss as noted above, which does not meet the criteria for the next higher rating. Further, it was specifically noted the Veteran did not experience weakness, fatigability, or instability.

From October 7, 2019, the preponderance of the evidence is against finding that the Veteran’s lumbar spine disability has been more nearly manifested by forward flexion of 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine. An October 2019 VA examination reflects forward flexion to 50 degrees with pain during flare-ups beginning at 45 degrees, extension to 25 degrees with pain during flare-ups beginning at 20 degrees, left lateral flexion to 25 degrees with pain during flare-ups beginning at 20 degrees, right lateral flexion to 20 degrees with pain during flare-ups beginning at 15 degrees, and bilateral rotation to 30 degrees with pain during flare-ups beginning at 25 degrees. These findings do not more nearly reflect 30 degrees in forward flexion as is required for a higher schedular rating. There was also no finding of ankylosis. While the Veteran was not examined after repetitive use over time, the examination was medically consistent with the Veteran’s statements indicating forward flexion to 45 degrees, extension to 20 degrees, left lateral flexion to 20 degrees, right lateral flexion to 15 degrees, and bilateral rotation to 25 degrees. Notwithstanding, the estimated loss of range of motion was described as forward flexion limited to 45 degrees, which again does not more nearly reflect 30 degrees flexion as is required for a higher schedular rating.

While the May 2019 VA examination report shows pain in all planes of motion and with weight bearing, the examiner noted that pain resulted in functional loss and provided those findings in degrees of loss of range of motion. Moreover, there was no radiculopathy, no guarding or muscle spasms, no muscle weakness, no tenderness to palpation, no IVDS, no neurological problems, and the reflex examination was normal. The Veteran did not use assistive devices. Additional factors contributing to disability included disturbance of locomotion (can walk slowly for 3 hours; 30-40 minutes of cardio exercise; difficulty in walking up or down stairs/inclines), and interference with sitting and standing (can only sit in certain positions, unable to stand longer than 2 hours). However, these appear to contemplate the symptoms associated with the currently assigned 20 percent rating. DeLuca, supra.

The May 2019 VA examination provided specific findings in degrees in limitation of motion as a result of flare-ups in compliance with the requirements in Sharp v. Shulkin, 29 Vet. App. 26, 34-36 (2017). The Board addressed these findings in the its decision. Furthermore, the Board finds that neither the lay nor medical evidence more nearly reflects the functional equivalent of flexion more nearly limited to 30 degrees or worse during a flare-up. Notably, there was no atrophy of disuse of the paravertebral muscles.

The preponderance of the lay and medical evidence indicates the Veteran’s lumbar spine disability more closely approximates a 20 percent rating from October 7, 2019, under DC 5237, as his symptoms include forward flexion greater than 30 degrees, and no muscle spasms and guarding severe enough to result in an abnormal gait and abnormal spinal contour. The Veteran’s lumbar spine disability does not more closely approximate a 40 percent rating under DC 5237, as his symptoms do not include forward flexion of 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine.

The Board has considered whether a higher disability rating is available under any other potentially applicable provision of the rating schedule. However, a higher rating is not warranted based on any other provision of the rating schedule. The record does not reflect that the Veteran had any incapacitating episodes, a period of acute signs and symptoms requiring bed rest prescribed by a physician and treatment by a physician that would warrant a higher rating. 38 C.F.R. § 4.71a. Formula for Rating IVDS Based on Incapacitating Episodes, Note (1). The May 2012 examiner as well as the October 2019 examiner noted the Veteran did not have incapacitating episodes due to his claimed condition during the last 12 months. Further, none of the Veteran’s treatment records within the referenced time include a prescription or notation for bedrest of at least two weeks. Radiculopathy was not found. IVDS is not shown and there are no abnormal neurological complaints or findings associated with the Veteran’s back disability.

The Veteran is competent to report that his disability is worse than presently evaluated. In this regard, the Board accepts his report of symptoms including pain and limited range of motion. See DeLuca, supra. However, neither the lay nor medical evidence reflects the functional equivalent of impairment required for a higher evaluation. Here, to warrant a higher rating, there must be the functional equivalent of lumbar flexion limited to 30 degrees or less, or ankylosis. In this case, pain or other symptoms are not shown to be productive of flexion limited to 30 degrees or worse.

Accordingly, the claim for rating in excess of 10 percent prior to October 7, 2019, and in excess of 20 percent thereafter is denied. Further staging of the rating is not warranted as the factual findings do not show any other distinct period where the disability exhibited symptoms that would warrant a different evaluation. Hart v. Mansfield, 21 Vet. App. 505 (2007); see also Fenderson v. West, 12 Vet. App. 119, 126 (2001). 

Accordingly, the appeal is denied. There is no doubt to resolve. 38 U.S.C. § 5107(b).

2. A rating in excess of 10 percent for a right knee disability.

The Veteran contends that a rating in excess of 10 percent is warranted for his right knee disability, because he has difficulty functioning without a heel insert. See NOD (May 2013).

The Veteran’s right knee disability is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5260, based on limitation of flexion. The Veteran’s right knee is separately rated for instability of the joint under 38 C.F.R. § 4.71a, Diagnostic Code 5257. The lay and medical evidence reflects that the instability of the knee is not greater than slight. The effective date, however, for this separate rating should be July 14, 2012, the date after separation from service. The prior Board remand was in order to obtain a comprehensive VA examination. This examination provided confirmation of the symptom present throughout the appeal period.

The Board concludes that the preponderance of the evidence is against a rating in excess of 10 percent for right knee disability based on limited flexion. The evidence reflects that right knee disability based on limited flexion is not more nearly manifested by flexion limited to 30 degrees or worse. However, the Board further concludes the evidence supports the assignment of a separate 20 percent rating for right knee limited extension from October 7, 2019.

The evidence reflects that right knee flexion is not more limited to 30 degrees or worse. However, the evidence further reflects right knee extension is limited to 15 degrees from October 7, 2019, based on VA examination findings of that date.

Standard range of knee motion is from zero degrees (on extension) to 140 degrees (on flexion). See 38 C.F.R. § 4.71, Plate II.

When the limitation of motion is non-compensable under the appropriate diagnostic codes, a rating of 10 percent may be applied to each such major joint (such as the knee) or group of minor joints affected by limitation of motion. The limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a.

Under Diagnostic Code (DC) 5260, a 0 percent (noncompensable) disability rating is assigned for flexion limited to 60 degrees, a 10 percent disability rating is assigned for flexion limited to 45 degrees, a 20 percent disability rating is assigned for flexion limited to 30 degrees, and a 30 percent disability rating is assigned for flexion limited to 15 degrees. 38 C.F.R. § 4.71a.

Diagnostic Code 5261 provides that extension limited to 5 degrees is noncompensably rated. A 10 percent evaluation requires the functional equivalent of extension limited to 10 degrees or more. A 20 percent evaluation requires the functional equivalent of extension limited to 15 degrees or more. 38 C.F.R. § 4.71a.

Additionally, separate ratings may be awarded for limitation of flexion and limitation of extension of the same knee joint. VAOPGCPREC 09-04, 69 Fed. Reg. 59990 (2004). In a precedent opinion by VA General Counsel, it held that separate ratings may be assigned in cases where a service-connected knee disability includes both a compensable limitation of flexion under DC 5260 and a compensable limitation of extension under DC 5261, provided that the degree of disability is compensable under each set of criteria. Id.

On VA examination in May 2012, the Veteran stated that the pain in his right knee began in 2004 as a result of prolonged standing, running and hiking while carrying heavy back pack. He reported flare-up as being limited by pain in activities such as prolonged standing, walking, climbing stairs, repetitive kneeling, squatting and running. Range of motion testing showed range of motion within normal limits bilaterally with pain beginning at 130 degrees. There was no limitation of extension. On repetitive use testing after three repetitions, the Veteran’s flexion was limited to 130 degrees, and extension was within normal limits. Functional loss was described as less movement than normal, pain on movement, disturbance of locomotion, interference with sitting and pain. Functional impact was described impact on ability to work due to impaired prolonged ambulation, repetitive kneeling, squatting and climbing. The Veteran had pain on palpation, and his muscle strength was shown as 5/5 (normal). 

VA treatment records reflect complaints of longstanding knee pain and use of braces. In January 2014, the Veteran reported improvement in his right knee after the initial injury in 2007, but also a worsening after a rigorous civilian personnel security training course. He reported difficulties with prolonged sitting, buckling, denied any locking, and feeling like his right knee is swollen at times. In March 2017, the Veteran underwent a right knee chondroplasty after reinjuring his right knee. In September 2017, he reported increased right knee pain during his physical therapy. In July 2019, it was noted that the Veteran was last seen by orthopedics about a year and half earlier for evaluation for Secret Service. His right knee had full active range of motion; he was stable to varus and valgus stress testing and anterior and posterior drawer. The right knee showed mild osteoarthritis. 

An October 2019 VA examination reflects diagnoses of degenerative arthritis, status-post arthroscopy of the right knee, which was noted as progression of patellofemoral pain syndrome (PFPS). Symptoms included pain with pushing on patella, pain on lateral side that migrates to center, cracking/popping, occasional numbness including when running, and giving out if pushed too much. The Veteran reported flare-ups and described them as his right knee swelling up and becoming painful 4 times a year for 3 hours with severity described as numbness with no movement. Functional loss was described as limitation to running only 1 mile at a slow pace; inability to stand longer than 2 hours due to pain; ability to sit limited to certain positions due to pain; walking limited to slow pace for 3 hours; limited to no more than 30-40 minutes of cardio exercise; difficulty in walking up or down stairs/inclines, lifting more than 45 pounds, bending down and tying shoes, and putting on socks; and increased pain during cold weather. Range of motion testing was from 0 to 130 degrees on the right with pain noted on flexion along with crepitus. Range of motion was noted to contribute to functional loss as it led to an inability to push, pull, reach, bend, kneel and twist normally. Pain was also noted on weight-bearing, non-weight-bearing and in passive range of motion. Repetitive use testing yielded no additional loss of motion. Regarding functioning with repeated use over time and during flare-ups of symptomology, range of motion was from 0 to 125 degrees on extension and flexion. The Veteran’s strength was 5/5 with no evidence of atrophy. Clinical findings reflect slight recurrent subluxation and lateral instability of the right knee. The Veteran occasionally used an immobilizing sleeve. No other abnormalities of the knees were noted. The examiner noted that there was objective evidence of pain on passive range of motion testing and when the joint was used in non-weight bearing.

Neither the lay nor medical evidence establishes that the right knee disability more nearly approximate the criteria for a higher evaluation than the currently assigned under Diagnostic Code 5260. Flexion does not more nearly approximate 30 degrees. To warrant a higher evaluation, there must be the functional equivalent of flexion limited to 30 degrees. 

In addition, as noted above, when assessing the severity of a musculoskeletal disability that is at least partly rated on the basis of limitation of motion, VA is generally required to consider the extent that the Veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated, such as during times when his symptoms are most prevalent (“flare-ups”) due to the extent of his pain, weakness, premature or excess fatigability, and incoordination. See DeLuca, 8 Vet. App. at 202; see also 38 C.F.R. §§ 4.40, 4.45, 4.59. Here, while there is indication of increased pain on repetition and during flare-ups, neither the medical nor lay evidence suggests that his flexion was limited to 30 degrees. 

The Board finds, however, that a separate 20 percent rating, but no higher, is warranted under DC 5261, for right knee limitation of extension, effective October 7, 2019. Here, the Veteran’s right knee extension is shown to be limited to 15 degrees with repeated use over time and during flare-ups on VA examination in October 2019. Therefore, a separate 20 percent rating for right knee limited extension, and no more, is warranted.

The Board has further considered the medical evidence for crepitus. However, neither the lay nor the medical evidence reflects any functional impairment not contemplated by the assigned evaluations. The Board has considered all knee codes but the ratings previously assigned, when considered with the rating assigned in this decision, contemplate all symptomatology of the knee.

The Board finds that the Veteran’s own report of symptomatology is credible. He described his functional impairment as limitation to running only 1 mile at a slow pace; inability to stand longer than 2 hours due to pain; ability to sit limited to certain positions due to pain; walking limited to slow pace for 3 hours; limited to no more than 30-40 minutes of cardio exercise; difficulty in walking up or down stairs/inclines, lifting more than 45 pounds, bending down and tying shoes, and putting on socks; and increased pain during cold weather. However, neither the lay nor medical evidence reflects the functional equivalent of symptoms required for higher evaluations under any potentially applicable criteria. Whether a disability meets the schedular criteria for the assignment of a higher evaluation is a factual determination by the Board based on the Veteran’s complaints coupled with the medical evidence. Both the lay and medical evidence are probative in this case. Although the Veteran may believe that he meets the criteria for the next higher disability ratings, his complaints along with the medical findings do not meet the schedular requirements for higher ratings than now assigned, as explained and discussed above.

Accordingly, the claim for a rating in excess of 10 percent for right knee limitation of flexion is denied except to the extent that the Board finds a separate evaluation is warranted for right knee limited extension. There is no basis to stage any of the assigned ratings. Hart, supra. There is no doubt to resolve. 38 U.S.C. § 5107(b).

3. A rating in excess of 10 percent for a right hand disability.

The Veteran seeks entitlement to an initial rating in excess of 10 percent for a right hand disability. He detailed that his first two fingers do not function well, he sometimes has difficulty closing his right hand, his right hand becomes lethargic when exposed to cold weather, and his right hand fatigues easily and its movements are difficult. See NOD (May 2013). 

The Board finds that the preponderance of the evidence is against an evaluation in excess of 10 percent for the right hand disability. The Veteran is rated at the maximum schedular level for disability of the right hand disability under Diagnostic Code 5229, and neither the lay nor the medical evidence reflects a finding of ankylosis.

The Veteran’s service-connected right hand disability is rated under Diagnostic Code 5229. Under Diagnostic Code 5229, for limitation of motion of the index or long finger, a noncompensable rating is warranted for a gap of less than one inch (2.5 cm) between the fingertip and the proximal transverse crease of the palm, with the finger flexed to the extent possible, and with extension limited by no more than 30 degrees. A 10 percent disability rating is warranted for a gap of one inch (2.5 cm) or more between the fingertip and the proximal transverse crease of the palm, with the finger flexed to the extent possible, or with extension limited by more than 30 degrees. Ten percent is the maximum schedular rating permitted under Diagnostic Code 5229. See 38 C.F.R. § 4.71a, DC 5229.

The Veteran underwent his initial VA examination in May 2012, and at that time his right hand and index finger manifested with stiffness and pain, flare-ups, and impaired manipulation. He had limited range of motion of index finger due to pain; additional limitation of motion after repetitive use; pain on movement; but no ankylosis. Functional impact was described as impaired pinching and manipulation with right hand index finger.

A July 2014 VA treatment note shows increased problems in the right hand possibly due to hardware. Another July 2014 VA treatment note showed that, in clenched fist position, there was a colinear depression of 35 degrees from long to small MCPJs, and one of 20 degrees from long to index fingers that were both found to be equal bilaterally suggesting no shortening on exam. Radiographs did not reveal any acute dislocations, osteopenia, or hardware loosening. The Veteran was assessed with stiffness of the right 2nd metacarpal shaft secondary to ORIF in 2006. A July 2019 right hand x-ray was intact. During his August 2019 treatment, the Veteran reported no right hand pain, no radicular symptoms, no loss of sensation, no weakness. He had full active range of motion of the hand and fingers, including metacarpal phalangeal joint of the second digit. There was no tenderness.

Most recently, the Veteran underwent a VA examination in October 2019, where he reported that his right hand fatigues and is painful in cold weather, and that it is hard to use index finger for long periods of time. The examiner found that pain limited functional ability with repeated use over a period of time; there was objective evidence of pain on passive range of motion testing; and objective evidence of pain when the joint is used in non-weight bearing. The examiner noted that pain did not limit functional ability after flare-ups. There was no ankylosis. 

Given the above findings and absent some showing of ankylosis, a rating in excess of 10 percent is not warranted. Evaluations of ankylosis or limitation of motion of single or multiple digits of the hand are based upon certain criteria most of which are specific for ankylosis of the various joints of the fingers. On examination, however, pain after repetitive use over time was demonstrated, with no demonstration of ankylosis. As noted above, the Veteran is in receipt of a 10 percent rating for functional loss due to pain. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca, 8 Vet. App. at 202. This is the highest available rating under Diagnostic Code 5229.

The Board has considered whether a higher or separate disability evaluation is available under any other potentially applicable provision of the rating schedule. However, ratings in excess of 10 percent are provided by Diagnostic Codes pertaining to ankylosis; as noted, there is no evidence that the Veteran has ankylosis of any of the digits of his hand. Hence, the diagnostic codes that provide evaluations in excess of 10 percent for ankylosis are not for application. See 38 C.F.R. § 4.71a, Diagnostic Codes 5216-5223, 5224-5227.

The Board accepts that the Veteran is competent to report on his observable symptomatology. However, whether a disability meets the schedular criteria for the assignment of a higher evaluation is a factual determination by the Board based on the Veteran’s complaints coupled with the medical evidence. Both the lay and medical evidence are probative in this case. Although the Veteran may believe that he meets the criteria for a higher disability rating, his complaints along with the medical findings do not comport with the assignment of a higher evaluation, as explained and discussed above.

Accordingly, the claim for an evaluation in excess of 10 percent is denied. The disability has not met the criteria for a higher evaluation at any time during the appeal period and, as such, there is no basis for a staged rating. See Hart, supra; see also Fenderson, supra.

4. An initial compensable rating for right leg length discrepancy.

The Veteran contends that he is entitled to a compensable initial rating for right leg length discrepancy, because he has difficulty functioning without a heel insert to equal out the length discrepancy. See NOD (May 2013). He is currently rated as noncompensable under Diagnostic Code 5275. 

The Board finds that the preponderance of the evidence is against a finding of compensable rating for right leg length discrepancy at any time during the rating period on appeal. 

Under Diagnostic Code 5275, a 10 percent rating is assigned for shortening of 1¼ to 2 inches (3.2 cms. to 5.1 cms); a 20 percent rating is assigned with shortening of 2 to 2½ inches (5.1 cms. to 6.4 cms.); a 30 percent rating is assigned for shortening of 2½ to 3 inches (6.4 cms. to 7.6 cms.); a 40 percent rating is assigned for shortening of 3 to 3½ inches (7.6 cms. to 8.9 cms.); a 50 percent rating is assigned for shortening of 3½ inches to 4 inches (8.9 cms. to 10.2 cms.); and a maximum 60 percent rating is assigned for shortening over 4 inches (10.2 cms.).

A May 2012 VA and an October 2019 VA examinations showed measurements of the Veteran’s leg length and found 98 cm. on the right side and 100 cm. on the left side, which results in a difference of 2 cm. The Veteran’s VA treatment records show that he used a cane to compensate for the length discrepancy in November 2012 and used a heel lift in February 2013. However, to warrant a compensable rating, the shortening of the lower extremity must be at least 3.2 cm. As the Veteran’s leg length discrepancy was 2 cm in May 2012 and in October 2019, he is not entitled to a compensable rating under Diagnostic Code 5275.

The Board acknowledges the Veteran’s reports of pain and limited mobility in his right leg and knee. However, those symptoms are already contemplated by the Veteran’s 10 percent rating that he receives under diagnostic code 5260, which contemplates painful motion and weakness in the extremity.

Based on the foregoing evidence, the Board finds that compensable rating is not warranted under Diagnostic Code 5275 as the weight of the evidence is against finding that the right leg is 1.25 to 2 inches shorter than the left leg. 38 C.F.R. §§ 4.3, 4.7, 4.71a.

The Board finds that there is no basis to “stage” the rating as the evidence shows no distinct period where the disability exhibited symptoms that would warrant different ratings. See Fenderson, Hart, both supra.

Accordingly, the claim for increase is denied. There is no doubt to resolve. 38 U.S.C. § 5107(b).

5. A compensable rating for right hand scar.

The Veteran contends that his right hand scar warrants compensable rating, because his hand is lethargic when exposed to cold weather, and he was told that the head of one of the screws broke off. See NOD (May 2013).

The Board concludes that the preponderance of the evidence is against a compensable evaluation for right hand scar. 38 C.F.R. § 4.118, Diagnostic Codes 7800-7805. Neither the lay nor the medical evidence more nearly reflects the criteria for a higher evaluation. 38 C.F.R. §§ 4.7, 4.118, Diagnostic Codes 7800-7805.

The Veteran is rated at a non-compensable rating under DC 7805 for surgical scarring of the right hand. 

Scars are rated under 38 C.F.R. § 4.118, Diagnostic Codes 7800-7805. The criteria under these diagnostic codes have changed during the pendency of the appeal and the Board has considered both the prior version (skin ratings as amended October 23, 2008) and the current version (skin ratings as amended August 13, 2018). See 83 Fed. Reg. 32593 (July 13, 2018).

Under the 2008 version of the schedule for rating skin disorders, DC 7800 applies to scars of the head, face, or neck. DC 7801 applies to deep and nonlinear scars. DC 7802 applies to burn scars that are superficial and nonlinear and cover an area greater than 929 square centimeters. DC 7804 applies to scars that are unstable or painful. DC 7805 directs that other scars (including linear scars) may be evaluated based on any disabling effects not considered in a rating provided under DCs 7800-04 using an appropriate diagnostic code. See 38 C.F.R. § 4.118 (2017) (effective October 23, 2008).

The August 13, 2018 revisions to Diagnostic Code 7801, 7802, and 7805, pertaining to scars (1) replace the deep/nonlinear/superficial terminology in Diagnostic Codes 7801 and 7802 with “underlying soft tissue damage;” (2) streamline the previously referenced body parts/areas into six zones of the body, defined as each extremity, the anterior trunk and the posterior trunk; and (3) indicating how to assign separate evaluations for each affected zone of the body under 38 C.F.R. § 4.25. See 83 Fed. Reg. 32, 592 (July 13, 2018). Scars and other skin disorders are evaluating under the General Rating Formula for the Skin. As to scars, effective August 13, 2018, a compensable rating continues to require that a scar be painful or unstable under DC 7804 or 7805. In this regard, the rating criteria remains the same as under the old regulation effective October 23, 2008; only the title for Diagnostic Code 7805 is changed.

DC 7805 provides that scars (including linear scars) not otherwise rated under DCs 7800-7804 are to be rated based on any disabling effects not provided for by those codes. In addition, the effects of scars otherwise rated under DCs 7800-7804 are to be considered. 38 C.F.R. § 4.118, DC 7805. Therefore, the Board has considered all applicable diagnostic codes.

DC 7800 contemplates burn scars of the head, face or neck; scars of the head, face, or neck due to other causes; or other disfigurement of the head, face, or neck. 38 C.F.R. § 4.118 (2018), DC 7800. As the Veteran’s scar is located on his left hand, DC 7800 is not applicable.

Under DC 7801, scars, not of the head, face or neck, that are deep and nonlinear warrant a 10 percent rating for an area exceeding 6 square inches (sq. in.) (39 sq. centimeters (cm.)). Scars in widely separated areas, as on two or more extremities or anterior and posterior surfaces of extremities or trunk, will be separately rated and combined in accordance with § 4.25.

DC 7802 provides that scars, not of the head, face, or neck, that are superficial and nonlinear warrant a 10 percent evaluation for an area of 144 sq. in. (929 sq. cm.) or greater. A superficial scar is one not associated with underlying soft tissue damage.

Under DC 7804, one or two scars that are unstable or painful warrant a 10 percent evaluation. Note (1) provides that an unstable scar is one where, for any reason, there is frequent loss of covering of skin over the scar. Note (2) provides that if one or more scars are both unstable and painful, 10 percent is added to the evaluation based on the total number of unstable or painful scars. Note (3) provides that scars evaluated under DCs 7800, 7801, 7802, or 7805 may also receive an evaluation under this diagnostic code when applicable.

Lay statements from the Veteran and VA treatment records show no complaints of or treatment for right hand scar. A July 2014 treatment record shows reports of pain, which were associated with potential hardware loosening, not the scar. See Medical Treatment Records - Government Facility (August 2016). An August 2019 VA treatment note showed no fractures to hardware. VA examinations dated in May 2012 and October 2019 reflect one scar on the right hand, status post ORIF for right hand fracture. Objectively, the scar was not painful or unstable with frequent loss of covering of skin. The right hand scar on the dorsal aspect of the right had was linear, stable and measured 4 centimeters in length and 0.2 centimeters in width with approximate total area of 0.8 centimeters. The scar involved no elevation, depression, adherence to underlying tissue, or missing underlying soft tissue. It did not have abnormal pigmentation, induration of inflexibility, or abnormal texture. It did not cause distortion of facial features or visible or palpable tissue loss. It did not cause limitation of function, and there was no functional impact on the Veteran’s ability to work.

During the appeal period, the Veteran’s right hand scar has not been manifested by one or more characteristics of disfigurement; and the scar is not deep and nonlinear, measuring at least 39 square centimeters; or superficial and nonlinear, measuring 929 square centimeters or greater; or unstable or painful; or resulted in functional impairment. See 38 C.F.R. § 4.118, Diagnostic Codes 7800-7805. As such, the criteria for a compensable evaluation for the right hand scar is not more nearly met under any potentially applicable criteria. See 38 C.F.R. § 4.118, Diagnostic Codes 7800-7805.

Whether a disability meets the schedular criteria for the assignment of a higher evaluation is a factual determination by the Board based on the Veteran’s complaints coupled with the medical evidence. The record lacks lay evidence in support of a higher rating in this case. Although the Veteran may believe he meets the criteria for a higher disability rating, the Board finds that his complaints along with the medical findings do not meet the schedular requirements for a higher evaluation, as explained above.

The Board has considered whether a higher or separate evaluation may be assigned under any other potentially applicable criteria. However, there is no other basis to award a separate or higher evaluation. The Board observes that right hand scar was not painful or unstable and covered 0.8 square centimeters; therefore separate evaluations are not warranted this basis. 38 C.F.R. § 4.118, Diagnostic Codes 7800-7804.

The Board accepts that the Veteran is competent to report his symptoms. However, whether a disability meets the schedular criteria for the assignment of a higher evaluation is a factual determination by the Board based on the Veteran’s complaints coupled with the medical evidence. Both the lay and medical evidence are probative in this case. Although the Veteran may believe that he meets the criteria for the next higher disability rating, his complaints along with the medical findings do not meet the schedular requirements for a higher evaluation than now assigned, as explained and discussed above.

The Board finds that there is no basis to “stage” the rating as the evidence shows no distinct period where the disability exhibited symptoms that would warrant different ratings. See Fenderson, Hart, both supra.

 

Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. § 5107(b); 38 C.F.R. § 4.3.

 

 

Nathaniel J. Doan

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. M. Pesin

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.